IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NALINI BIDANI, </br></br> Plaintiff, </br></br> v. </br></br> DENIS McDONOUGH, Secretary of the United States Department of Veterans Affairs, </br></br> Defendant. | Case No. 18 C 7188 </br></br> Judge Robert W. Gettleman |

**MEMORANDUM OPINION & ORDER**

Plaintiff Dr. Nalini Bidani brings a first-amended complaint against defendant Denis McDonough, Secretary of the United States Department of Veterans Affairs, alleging disability discrimination, failure to accommodate, and retaliation in violation of the Rehabilitation Act, 29 U.S.C. § 701, et seq., discrimination and retaliation on the basis of race, national origin, and religion, in violation of Title VII, 42 U.S.C. § 2000 et seq., and discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621. Defendant has filed a motion for summary judgment on all claims (Doc. 67). In her response to defendant's motion, plaintiff states that she "withdraws her claims for national origin, race, and age discrimination and retaliation, and hostile work environment and elects to proceed on her claims of disability discrimination, failure to accommodate and retaliation under the Rehabilitation Act." For the reasons stated below, defendant's motion (Doc. 67) is granted.

**BACKGROUND**

In 2005, plaintiff began working part-time for the Jesse Brown Veterans Affairs Medical Center as a staff radiologist. In 2012, Dr. Caryl Salomon was appointed Chief of Medical

1

Imaging and became plaintiff's supervisor. Starting in 2013, Dr. Salomon expressed concerns over plaintiff's productivity and plaintiff's attendance. Dr. Salomon believed that plaintiff was abusing the sick leave policy, as evidenced by the fact that plaintiff frequently took unscheduled sick leave on Mondays, Fridays, or immediately before or after a scheduled day off. In April 2013, Dr. Salomon confronted plaintiff about this issue and sent plaintiff a memo detailing her concerns. Several years later, after conducting a department-wide review of sick leave requests in 2016, Dr. Salomon concluded that plaintiff was still abusing sick leave by using it to extend weekends and scheduled absences, rather than for legitimate illnesses or doctors' visits. Dr. Salomon sent plaintiff another memo on this issue on February 24, 2017.[1]

Plaintiff provided a written response to both memos, attempting to explain her absences. In response to the April 2013 memo, plaintiff provided a doctors' note consisting of a single paragraph: "Dr. Bidani has been a patient of mine for 15 years. She has multiple medical problems including, sciatica, hypertension, diabetes, nephrolithiasis, and a meniscal tear in her left knee. These medical issues are likely to necessitate occasional absences from work. Please make all appropriate allowances and contact me if necessary." In response to the February 24, 2017, memo, plaintiff provided a nearly identical doctors' note. Dr. Salomon did not believe that these notes adequately explained plaintiff's excessive use of sick leave on Mondays and Fridays.

In addition to concerns over sick leave, Dr. Salomon identified issues with plaintiff's productivity. Starting in 2013, Dr. Salomon met with plaintiff to discuss plaintiff's productivity as measured by Relative Value Units ("RVUs"), and consistently informed plaintiff that she was under her target RVUs. After speaking with plaintiff about this issue for several years, Dr. Salomon put plaintiff on a performance improvement plan in 2016. Defendant has provided

---

[1] Dr. Salomon also sent plaintiff a letter regarding plaintiff's use of sick leave on February 13, 2017, but followed up with a more formal memo that would be placed in plaintiff's personnel folder.

2

numerous examples of its communications with plaintiff, meeting notes, and performance evaluations, all regarding plaintiff's productivity. It appears that despite these numerous meetings, performance evaluations, and a performance improvement plan, plaintiff's productivity did not improve.

On February 10, 2017, plaintiff had an altercation with Dr. Myriam Bermudez (the Assistant Chief of Radiology and one of plaintiff's supervisors) over whether another employee could turn off the lights in plaintiff's office. Plaintiff went into Dr. Bermudez's office and proceeded to yell at her, in front of several other employees. Dr. Bermudez described the incident in an email. Dr. Salomon conducted a fact-finding meeting on February 17, 2017, to determine if Dr. Bermudez's description of the altercation was accurate. Dr. Salomon questioned plaintiff and received statements from the two employees who witnessed the altercation. During this meeting, plaintiff complained that she felt that Dr. Salomon was "harassing" her about the issue of sick leave and was building a case against her.

According to Dr. Salomon, at the conclusion of the February 17, 2017, meeting, Dr. Salomon believed that plaintiff had behaved inappropriately, and that plaintiff's behavior warranted termination of plaintiff's employment. At some point after the fact-finding meeting, Dr. Salomon recommended terminating plaintiff's employment. Dr. Salomon, together with Human Resources, compiled an evidence file that proposed plaintiff's termination, and sent that file to Marc Magill, the Director of the center.

After the fact-finding meet, plaintiff contacted the VA's internal EEO office on February 22, 2017, and filed an informal complaint of discrimination and retaliation. The EEO notified Marc Magil of plaintiff's EEO claim on March 8, 2017.

On March 10, 2017, Marc Magil accepted Dr. Salomon's proposal and sent a letter to plaintiff indicating that plaintiff would soon be removed from her position. By letter dated March 20, 2017, the VA terminated plaintiff's employment, effective March 22, 2017, for unacceptable attendance, performance, and conduct unbecoming a federal employee.

## DISCUSSION

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material facts exists if "there is evidence such that a reasonable jury could return a verdict in favor of the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." See CTL ex rel. Trebatoski v. Ashland Sch. Dist., 743 F.3d 524, 528 (7th Cir. 2014). But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture." Grant v. Trustees of Ind. Univ., 870 F.3d 562, 568 (7th Cir. 2017).

Defendant moves for summary judgment on plaintiff's claims of disability discrimination, failure to accommodate, and retaliation, all under the Rehabilitation Act. A claim under the Rehabilitation Act "has two basic elements: (1) the plaintiff must be a qualified individual with a disability; and (2) the plaintiff must have been denied governmental benefits because of his disability." P.F. by A.F. v. Taylor, 914 F.3d 467, 471 (7th Cir. 2019) (the ADA and Rehabilitation Act are "functionally identical"). "If an individual is not qualified for her job, for reasons unrelated to her disability, 'the ADA does not shelter individuals for adverse

4

employment actions.'" Id. (citing Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 862 (7th Cir. 2005)).

To show that she is disabled, plaintiff must demonstrate that she has a physical or mental impairment that substantially limits one or more major life activities (as compared to the general population).[2] See Bluestein v. C. Wisconsin Anesthesiology, S.C., 986 F.Supp.2d 937, 946 (W.D. Wisc. 2013), aff'd 760 F.3d 944 (7th Cir. 2014). Prior to the passage of the ADA Amendments Act of 2008 ("ADAAA"), courts applied a more stringent standard when determining whether an impairment substantially limited a major life activity such that it constituted a disability. 42 U.S.C. § 12102(4)(A); see also, Cloutier v. GoJet Airlines, LLC, 311 F.Supp.3d 928, 936 (N.D. Ill. 2018). In passing the ADAAA, Congress reaffirmed its commitment to establishing a "broad scope of protection" under the ADA and expressly rejected the Supreme Court's determinations of what constituted a disability. ADAAA, Pub. L. 110-324, 122 Stat. 3558 (2008).

As amended by the ADAAA, the ADA specifically defines "major life activities" to include "the operation of major bodily function," which, in turn, includes endocrine function. 42 U.S.C. § 12102(2)(B). Although courts are required to undertake an individualized assessment to determine whether a given impairment substantially limits a major life activity, 29 C.F.R. § 1630.2(j)(iv), "given their inherent nature," certain types of impairments "will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity." Id. § 1630.2(j)(3)(ii). Regulations promulgated by the EEOC specifically name diabetes as one such impairment, because it necessarily "substantially limits endocrine function." § 1630.2(j)(3)(iii).

---

[2] Plaintiff could also meet this definition by showing that she has a record of such an impairment or that her employer regarded her as having such an impairment, 42 U.S.C. § 12102(1)(A)-(C); 29 U.S.C. § 794(d). Because plaintiff has not suggested that she qualifies under either category, the court disregards them.

"Consequently, a number of courts have observed that, under the ADAAA and its implementing regulations, diabetes will generally qualify as a disability for purposes of the Act." Cloutier, 311 F.Supp.3d at 937 (collecting cases).

During her employment with defendant, plaintiff provided two doctors' notes saying that she has several medical conditions, including diabetes, sciatica, hypertension, nephrolithiasis, and a meniscal tear, and that these issues would require occasional absences from work.[3] Plaintiff has thus demonstrated that she was an individual with a disability.

However, plaintiff has failed to tie her disability to her need for sick leave, or to any discriminatory conduct by defendant. Plaintiff claims that she was discriminated against because of her disability, but the record does not support such an inference. Defendant has submitted evidence that plaintiff was terminated due to unsatisfactory attendance, misuse of sick days, low productivity, and inappropriate conduct. Plaintiff argues that these reasons are pretextual. "Under a pretext analysis, the focus is whether the employer honestly believed the reason it has given for termination." Stelter v. Wisconsin Physcians Service Ins. Co., 950 F.3d 488, 490 (7th Cir. 2020). The pretext inquiry has two distinct components: first, that the stated reason is dishonest; and second, that the real reason is prohibited animus. Chatman v. Bd. of Edu. of City of Chi., 5 F.4th 738, 746 (7th Cir. 2021). To establish pretext, plaintiff needs to show through inconsistencies or contradictions that the reason for termination was not the reason proffered, but instead discriminatory. Id.

The reasons Dr. Salomon gave for terminating plaintiff—including absenteeism, misuse of sick days, low productivity, and inappropriate conduct—were frequently communicated to

---

[3] Defendant objects that the two doctors' notes are hearsay and should be disregarded. The court disagrees. First, the doctors' notes can be admitted for defendant's state of mind and defendant's reaction to this information. Second, because defendant does not contest the notes' reliability, they can be admitted under F.R.E. 807.

6

plaintiff. Defendant sent several memos to plaintiff regarding the sick leave policies and Dr. Salomon's suspicion that plaintiff was abusing sick leave. Defendant further chronicled the low productivity RVUs in plaintiff's performance evaluations[4] and conducted a thorough fact-finding meeting regarding the incident between plaintiff and Dr. Bermudez. The reasons defendant provided are consistent with Dr. Salomon's continued and expressed concerns over plaintiff's behavior, productivity, and absenteeism and misuse of sick days, rather than discriminatory animus. See Stelter, 950 F.3d at 491 ("The ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability. The fact is that in most cases, attendance…is a basic requirement of most jobs."). No reasonable jury could conclude that defendant's proffered reasons are pretext. Consequently, no reasonable jury could find that plaintiff was discriminated against or terminated because of her disability. Summary judgment is granted on plaintiff's discrimination claim.

Next, plaintiff claims that defendant did not accommodate her disability. Defendant first responds that plaintiff failed to administratively exhaust this claim, because plaintiff's EEO charge did not include any allegation regarding a failure to accommodate. The charge does not contain any allegation that plaintiff sought an accommodation, or that defendant denied her request. Plaintiff argues that she told the EEO investigator that Dr. Salomon was punishing her for using sick leave, but this statement does not establish that plaintiff sought or was denied an accommodation. See Redmond v. Refco Group Ltd., LLC/Refco, LLC, 2004 WL 3119028, at

---

[4] Plaintiff argues that these reasons are pretextual because her performance reviews were generally favorable. But defendant is not arguing that plaintiff's "performance was terrible overall, or that [plaintiff] was a terrible physician; rather, Dr. Salomon was dissatisfied with [plaintiff's] productivity." Plaintiff's criticisms of defendant's documentation do not change the court's pretext analysis. See Hage v. Thompson Distrib. Co., 436 F.3d 816, 827 (7th Cir. 2006) ("[C]omplaining that [defendant] did not document the performance problems does not create an inference of pretext…because in complaining about the lack of documentation, the plaintiffs are not really challenging the veracity of [defendant's] proffered reason, but are rather attempting to impermissibly increase [defendant's] burden…."). Regardless, and contrary to plaintiff's argument, defendant thoroughly documented issues with plaintiff's misuse of sick leave and productivity.

\*6 (N.D. Ill. Dec. 22, 2004) ("The Seventh Circuit has held that a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA. Thus, to bring a failure to accommodate claim, an ADA plaintiff must have included that claim in his or her EEOC charge."). Because plaintiff did not raise a claim of failure to accommodate in her EEO complaint, or even mention that she sought an accommodation, her failure to accommodate claim is barred.

Even if plaintiff had administratively exhausted her failure to accommodate claim, summary judgment is still appropriate. When an employee notifies an employer of a disability, the Rehabilitation Act requires an interactive process between the employee and employer to determine an appropriate workplace accommodation as necessary. Stelter v. Wisconsin Physcians Service Ins. Co., 950 F.3d 488, 491 (7th Cir. 2020) (citing Spurling v. C&M Fine Pack, Inc., 739 F.3d 1055, 1061 (7th Cir. 2014)). Plaintiff has not identified any request for an accommodation. "A plaintiff typically must request an accommodation for her disability to claim that she was improperly denied an accommodation…." Stelter, 950 F.3d at 491 (citing Preddie v. Bartholemew Consol. Sch. Corp., 799 F.3d 806, 813 (7th Cir. 2015)) (emphasis in original). Having not identified any request for accommodation, plaintiff's claim fails. The court grants summary judgment on plaintiff's failure to accommodate claim.

Finally, plaintiff claims that defendant retaliated against her. To survive summary judgment on a retaliation claim, plaintiff must offer evidence of: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. Skiba v. Illinois Central Railroad Co., 884 F.3d 708, 718 (7th Cir. 2018). Plaintiff identifies two instances of statutorily protected activity: first, complaining to Dr. Salomon of "harassment" over sick leave at the February 17, 2017, fact-finding meeting; and

8

second, her EEO charge. The first instance does not constitute protected activity as a matter of law because plaintiff did not claim that the harassment occurred because of her disability or other protected class. Id. ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient."). Plaintiff spoke of harassment only in generalized terms—she did not tie that harassment to her disability. In contrast, her EEO charge constitutes a protected activity because it identified her disability as the cause of her discrimination and retaliation.

However, plaintiff has failed to demonstrate a causal connection between her EEO charge and her termination. Plaintiff claims that she has satisfied this element because she filed her EEO complaint on February 22, 2017, and defendant terminated her employment on March 20, 2017. Plaintiff's sole evidence in support of the causal connection between her EEO charge and her termination involves the allegedly suspicious timing of her termination. But "the mere fact that one event preceded another does nothing to prove that the first event caused the second." Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918-19 (7th Cir. 2000). Indeed, "[w]hen the events that set a disciplinary decision in motion precede the protected activity, courts have found that suspicious timing will not support a retaliation claim." Jones v. Alpha Rae Personnel, Inc., 903 F.Supp.2d 680, 687 (N.D. Ind. 2012); see also Long v. Teachers' Ret. Sys. of the State of Ill., 585 F.3d 344, 354 (7th Cir. 2009) (stating that "a decline in performance before the employee engages in protected activity does not allow for an inference of retaliation").

Here, the record indicates that defendant terminated plaintiff's employment due to an extensive and well-documented history of performance, attendance, and misconduct issues. Dr. Salomon confronted plaintiff about her misuse of sick leave and productivity issues numerous times before plaintiff filed her EEO charge. Further, plaintiff engaged in an altercation with her

9

supervisor on February 10, 2017, and Dr. Salomon conducted a fact-finding meeting regarding that altercation on February 17, 2017—several days before plaintiff filed her EEO charge on February 22. Dr. Salomon's declaration states that she decided to recommend plaintiff's termination at that February 17, 2017, meeting. The court acknowledges that, at first glance, the timing of plaintiff's termination several days after Marc Magill learned about plaintiff's EEO charge could look suspicious. But when coupled with the facts and evidence of plaintiff's misuse of sick days, productivity issues, and the altercation, no reasonable jury could find that defendant retaliated against plaintiff. Summary judgment is granted on plaintiff's retaliation claim.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment [67] is granted. Civil case terminated.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:   January 31, 2022**